IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BAZARIAN INTERNATIONAL
FINANCIAL ASSOCIATES, L.L.C.,

    Plaintiff,

    v.                                                   Civil Action No. 1:13-cv-01981-BAH

DESARROLLOS AEROHOTELCO, C.A.,
WALTER LUCIANO STIPA, an individual,
DESARROLLOS NEWCO 22, C.A.,
DESARROLLOS HOTELCO CORPORORATION
CURACAO HOLDING, N.V., DESARROLLOS
HOTELCO CORPORATION ARUBA HOLDING,
N.V. DESARROLLOS HOTELCO
CORPORATION DHC ARUBA, N.V. AND
DESARROLLOS HOTELCO CORPORATION
ARUBA  HOLDING CARACAS, S.A.,

    Defendants.
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S TRIAL BRIEF ON
SUCCESSOR/RELATED ENTITY LIABILITY AND ALTER EGO LIABILITY**

Defendants Desarrollos Hotelco, C.A., Desarrollos Hotelco Corporation Curacao Holding, N.V., and Desarrollos Hotelco Corporation DHC Aruba, N.V. (collectively, "Defendants"), by and through their undersigned counsel and pursuant to this Court's paperless Minute Order dated April 20, 2018, respond in opposition to Plaintiff Bazarian International Financial Associates, LLC's ("Plaintiff") Trial Brief on Successor/Related Entity Liability and Alter Ego Liability (Doc. 107) (the "Trial Brief").  In opposition to the Trial Brief, Defendants state as follows:

**INTRODUCTION**

Plaintiff, in its Trial Brief, entirely misses the point, and completely avoids addressing the law of the case set forth in the Court's Memorandum Opinion on defendants' Motion to Dismiss

1

Plaintiff's First Amended Complaint ("Memorandum Opinion") (Doc. 37). It is undisputed that the only claim left to be tried in this case is Plaintiff's breach of contract claim alleged in Count I of the First Amended Complaint (Doc. 13).[1] Plaintiff's sole breach of contract claim stems from the non-payment of an "investment banking fee" more particularly described in Section 2.C of the February 5, 2007 Agreement between Plaintiff and Desarrollos Aerohotelco, C.A. ("Aerohotelco"), predecessor-in-interest to Desarrollos Hotelco, C.A. ("Hotelco, C.A.") (the "Agreement") (Doc. 13-1).

While Plaintiff and Aerohotelco are the only two signatories to the Agreement, in Its Memorandum Opinion, this Court found that the non-signatory Defendants[2] were also bound by the Agreement based on language contained in the Agreement's preamble.[3] More specifically, the Court found that the non-signatory Defendants were bound by certain provisions of the Agreement (*i.e.*, the forum selection clause at Section 5 of the Agreement).[4] However, the Court, in identifying whether such entities were bound by the contractual obligation for the payment of the Debt Fee under Section 2.C of the Agreement, correctly found that such obligation was limited to Aerohotelco:

---

[1] The Court previously dismissed Plaintiff's claim for Quantum Meruit/Unjust Enrichment (Count II) for failure to state a claim (s*ee* Doc 36 and 37) and subsequently endorsed that ruling during the Pre Trial Conference held on April 20, 2018.

[2] The non-signatory Defendants included Desarrollos Newco 22, C.A. ("Newco"), a Venezuelan corporation; Desarrollos Hotelco Corporation Curacao Holding, N.V. ("Hotelco Curacao"), a Curacao corporation; Desarrollos Hotelco Corporation Aruba Holding, N.V. ("Aruba Holding"), an Aruban corporation; and Desarrollos Hotelco Corporation DHC Aruba, N.V. ("DHC"), an Aruban corporation. (FAC, Doc. 13, ¶¶ 3-9). (Mem. Opinion, Doc. 37 at p. 1, fn 1).

[3] The preamble to the Agreement states that the Agreement is entered into by and among Plaintiff and Aerohotelco (identified as the "*Company*"), *and/or its successor companies or any related entities which intend to invest in and/or develop the Project.*" (Agreement, Doc. 13-1, Preamble (emphasis added)).

[4] *See* Mem. Opinion part III.A. at p. 10-14.

> Second, the defendants argue that, even if the plaintiff were entitled to the Debt Fee, the breach of contract claim may be asserted only against Aerohotelco because the other defendants were not party to the Agreement and had no obligation to pay the Debt Fee to the plaintiff. Defs.' Mem. at 37.  As support, the defendants cite Section 2.C of the Agreement, which addresses the payment of the Debt Fee, and provides that the plaintiff "will be entitled to receive investment banking fees from the Company," which is defined as Aerohotelco.  Investment Bank Agreement § 2.C; Defs.' Mem. at 37…. This interpretation ***limiting the obligation to pay the Debt Fee to only Aerohotelco*** is consistent with D.C. law, which gives greater weight to "'specific terms and exact terms'" than to general language, such as that in the preamble. *Adbelhrman,* 76 A.3d at 891 (quoting *Washington Auto. Co. v. 1828 L St. Assocs.*, 90 A.2d 869, 880 (D.C. 2006) (internal quotations omitted)).

Mem. Opinion, Doc. 57, at p. 32.

Aerohotelco was succeeded in interest by Hotelco C.A. following a 2007 merger between the two companies and Hotelco C.A. was voluntarily substituted as a Defendant in this case in place of Aerohotelco.[5]  Accordingly, consistent with this Court's prior rulings, Plaintiff's claim for breach of contract seeking payment of the Debt Fee allegedly due under Section 2.C of the Agreement is, and should be, limited to Aerohotelco's stipulated successor-in-interest, Hotelco, C.A.  As written, the Agreement specifically carves out any contractual liability for the payment of a Debt Fee by the remaining defendants, DHC and/or Hotelco Curacao, regardless of whether these entities are deemed successor and/or related entities to Aerohotelco in the development of the Ritz-Carlton Aruba.  The broad scope and language of the preamble does not apply to circumvent the specific terms limiting the contractual obligation to pay the Debt Fee to a specific entity.  As a result, the only theory of liability arguably available to Plaintiff against the remaining

---

[5] In order to streamline and simplify this case, by a joint stipulation and order entered on May 1, 2017 (Doc. 55), Desarrollos Hotelco, C.A. was substituted in as a Defendant for Aerohotelco and Hotelco C.A. agreed to assume any potential liability of Aerohotelco for the alleged breach of contract claim.  In exchange, Plaintiff voluntarily dismissed three of the originally named Defendants: Walter Stipa, Desarrollos Newco 22, C.A., and Desarrollos Hotelco Corporation Aruba Holding, N.V.

3

non-signatory Defendants, DHC and Hotelco Curacao, is imputed liability under an "alter ego" theory. This is consistent with this Court's prior ruling on this issue noting that:

> Notwithstanding the absence of a contractual obligation, the plaintiff alleges that Aerohotelco's duty [now Hotelco, C.A. by stipulation] to pay the plaintiff the Debt Fee may be imputed to the Project Developers [now DHC and Hotelco Curacao] because they are "alter egos" of Aerohotelco [now Hotelco, C.A.].

Mem. Opinion, Doc 37, p. 33. However, Plaintiff has not pled in the First Amended Complaint, either as a separate count or otherwise, and cannot prove, that DHC and/or Hotelco Curacao are alter egos of Hotelco, C.A., and the instruction proposed by Plaintiff is improper.

Based on the Court's explicit findings contained in the Memorandum Opinion, Defendants have accepted, for the purpose of trial, the Court's ruling that DHC and/or Hotelco Curacao are bound under the Agreement, but do not accept Plaintiff's improper position that DHC and/or Hotelco Curacao are contractually liable under a breach of contract claim for failure to pay the Debt Fee under Section 2.C of the Agreement, such that Plaintiff's continuous lumping of all "Defendants" together in Plaintiff's proposed jury instruction would be proper. In a further effort to streamline this case, Defendants proposed to Plaintiff the withdrawal of all of Defendants' proposed jury instructions regarding contract formation that are disputed by the Plaintiff in the Trial Brief,[6] provided, however, that Plaintiff's breach of contract instruction and any related instructions are limited to Hotelco C.A. Plaintiff, has refused to do so as it is unwilling to accept this Court's ruling that only Hotelco C.A., as the stipulated successor-in-interest, by merger, of

---

[6] Contract formation – elements, offer, acceptance, consideration, intent to be bound, certainty, responsibility for proof/affirmative defenses, preponderance of the evidence, Defendants' affirmative defense: failure consideration and Defendants' affirmative defense: wrong party (Doc. 71-14, at 16, 18, 19, 20, 22, 23, 25, 29 and 30).

Aerohotelco, can be found contractually obligated to pay the Debt Fee under Section 2.C of the Agreement, not DHC and/or Hotelco Curacao.

For the reasons set forth in detail below, the Court should reject Plaintiff's proposed jury instructions on Successor-in-Interest Liability (Doc. 71-13 at p. 19 and Doc. 88 at p. 20) and Alter Ego Liability (Doc. 71-13 at p. 21 and Doc. 88 at p. 21) in their entirety, or, alternatively, allow Defendants to provide a competing instruction regarding Successor-in-Interest Liability and Alter Ego Liability.

## **MEMORANDUM OF LAW**

Plaintiff has proposed two separate jury instructions addressing successor-in-interest liability and alter ego liability be read to the jury that are unnecessary, and/or fail to fully, and properly, lay out the applicable law. This memorandum will address each of Plaintiff's two instructions in turn.

### I. **Plaintiff's Successor-In-Interest Instruction Is Improper and Inapplicable Under the Law and Should be Rejected.**

Plaintiff contends this Court should give an instruction that would allow the jury to find DHC and Curacao are liable as successors in interest to "Desarrollos Aerohotelco and/or Desarrollos Hotelco," if the jury finds that DHC and Hotelco Curacao "continued the business" of Aerohotelco and/or Hotelco, C.A..

Plaintiff is incorrect for at least three reasons. First, the Parties have already stipulated that Hotelco, C.A. is the successor in interest to Desarrollos Aerohotelco. Specifically, the Joint Stipulation Regarding Substitution and Voluntary Dismissal of Parties states:

> Effective as of the filing of this Joint Stipulation, Desarrollos Hotelco, C.A., a Venezuelan entity, shall be substituted in as a Defendant for Desarrollos Aerohotelco, C.A. Desarollos Hotelco, C.A. is *the* successor in interest to Desarrollos Aerohotelco C.A., which was merged into Desarollos Hotelco, C.A. in early 2007.

5

*See* Joint Stipulation Regarding Substitution and Voluntary Dismissal of Parties entered by the Court on May 1, 2107 at ¶1 (Doc. 55).

The District of Columbia Circuit Court of Appeals has held, "Stipulations of fact bind the court and the parties."  *United States of America ex rel. Richard F. Miller v. Bill Harbert International Construction, Inc.*, 608 F.3d 871, 889 (D.C. Cir. 2010).  Moreover, the United States Supreme Court has held,

> [F]actual stipulations are formal concessions…that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.

*Christian Legal Soc. Chapter of the University of California, Hastings College of Law v. Martinez*, 561 U.S. 661, 677-78 (2010).

Accordingly, the only entity that could potentially face *successor* liability, under a breach of contract theory, for Aerohotelco's alleged failure to pay the Debt Fee under Section 2.C of the Agreement is Hotelco, C.A.—its stipulated successor in interest.  The successor-in-interest liability instruction, therefore, is unnecessary and would be confusing to the jury.

Second, the broad language of the preamble, which includes language regarding "*successor companies or any related entities which intend to invest in and/or develop the Project*," has already been found by this Court not to apply to the specific contractual provision at issue in this case, Section 2.C of the Agreement.  *See* Mem. Opinion, Doc 37, p. 32.  Plaintiff's only claim for relief in its breach of contract claim (Count I of the First Amended Complaint) is the payment of the Debt Fee under Section 2.C. Thus, regardless of the other obligations, if any, of DHC and/or Hotelco Curacao under the Agreement, a finding that these separate entities are successor companies or related entities, would not obligate them to pay the Debt Fee, should a jury find that same should be paid to Plaintiff.

Third, Plaintiff has not, in any event, properly stated the law of successor-in-interest liability. A plaintiff must first establish that there has been a sale or acquisition of another entity's assets.[7] *See e.g. Bingham v. Goldberg, Marchesano, Kohlman, Inc.*, 637 A.2d 81, 89 (D.C. 1994) ("Ordinarily, a business entity which acquires the assets of another business is not liable for its predecessor's liabilities and debts."); *see also Alkanani v. Aegis Defense Services, LLC*, 976 F. Supp. 2d 1, 11 (D. D.C. 2013) (finding no successor liability where "there was no sale of assets…as is required by the general rule."); *Holland v. Williams Mountain Coal Co.*, 256 F.3d 819, 824 (D.C. Cir. 2001) (stating you analyze the "mere continuation" exception "after the transfer of assets"); *ECN Financial, LLC v. Chapman*, 17-CV-2842, 2018 WL 623679, at *3 (E.D. Pa. Jan. 30, 2018) (plaintiff failed to allege successor in interest where "there is no evidence of the transfer of stock, which would demonstrate a merger, or evidence that all assets were sold or transferred"). Plaintiff's proposed instruction and Trial Brief ignore this first step of the analysis.

However, even if a plaintiff can demonstrate that a particular defendant is a successor entity, the general rule of successor liability nevertheless shields the successor from any of its predecessor's liabilities and debts. *See Bingham*, 637 A.2d at 89. There are four recognized

---

[7] Plaintiff's sole allegation pertaining to the alleged "transfer of the option" will be discussed further below. However, the Court should note that Plaintiff's attempt to suggest any sort of misconduct by Defendants is completely disingenuous, given Plaintiff's previous involvement in attempting to construct the hotel, its preparation, in part, of the Proposal that outlined in detail the eventual creation of these companies for discrete purposes, as required by the Government of Aruba in order for the Government of Aruba to transfer the option and enter into a lease. Thus, the creation of other entities was not only contemplated, but was a precondition. Further, even if there was a transfer as alleged, the transfer of one asset is not enough to show all assets have been transferred or that Hotelco, C.A. has been otherwise stripped of all of its assets and is unable to pay, should a jury find it liable. Plaintiff drafted the Agreement, and if it wanted the company ultimately awarded the option to be contractually responsible for the Debt Fee, it would not have limited Section 2.C of the Agreement to Aerohotelco, now Hotelco, C.A.

exceptions to the general rule, none of which are applicable here.[8] The exceptions recognized by the Courts in the District of Columbia are "designed to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of reach of the predecessor's creditors." *Jackson v. George*, 146 A.3d 405, 414 (D.C. 2016).[9]

The Plaintiff relies on one of the exceptions in its Trial Brief. Specifically, Plaintiff contends in its proposed jury instruction and Trial Brief dated April 25, 2018 (Doc. 107) that it intends to prove DHC and Hotelco Curacao are successors in interest because "they continued the business of Desarrollos Aerohotelco and/or Desarrollos Hotelco under the Agreement by investing in and developing the Ritz Carlton Aruba." *See* Plaintiff's Proposed Jury Instruction on Alter Ego Liability (Doc. 71-13; 88). Plaintiff's contention, even if true, is insufficient to establish that Desarrollos Hotelco is a "mere continuation" of Desarrollos Aerohotelco.

To establish that a successor entity is a "mere continuation" of a selling corporation, Plaintiff must address,

> (1) whether there is a common identity of officers, directors, and stockholders in the purchasing and selling corporations,[10] (2) the sufficiency of the consideration passing from one entity for the sale of its interest in another, (3) whether the old entity failed to arrange to meet its contractual obligations, (4) whether there is a continuation of the corporate entity of the seller.

---

[8] Some states recognize six exceptions.

[9] The four exceptions are as follows: "(1) the buyer expressly or impliedly agrees to assume such debts; or (2) the transaction amounts to a de factor merger of the buyer and seller; or (3) the buying corporation is a mere continuation of the selling corporation; or (4) the transaction entered into fraudulently in order to escape liability for such debts." *Alkanani*, 976 F. Supp. 2d at 10.

[10] "While this factor is a key element in examining transactions between two corporations, its applicability is less useful in considering a situation where the claimed successor serves as corporate general partner." *Bingham*, 637 A.2d at 91.

8

*Glenn v. Fay*, 281 F. Supp. 3d 130, 142 (D. D.C. 2017) (quotation omitted).[11] Moreover, several courts, including courts in this District, have routinely held that "[s]uccessor liability is predicated on the fact that the 'predecessor entity is absorbed into the successor and ceases to exist as a viable or functional business' [and accordingly,] as is the case here, the mere continuation exception is inapplicable where the 'predecessor entity remains a viable concern.'" *Sodexo Operations, LLC v. Not-For-Profit Hospital Corp.*, 264 F. Supp. 3d 262, 269 (D.D.C. 2017) (quoting *Edwards v. Ocwen Loan Servicing, LLC*, Case No. 13-CV-00709, 2015 WL 9484458, at *9 (D. D.C. Dec. 29, 2015)); *see also Alkanani,* 976 F. Supp. 2d at 11 ("the continuation exception to the general successor liability rule is inapplicable whereas in this case, the predecessor entity remains a viable business concern"); *Village Builders 96, L.P. v. U.S. Laboratories, Inc.*, 112 P.3d 1082, 1092 (Nev. 2005) (plaintiff failed to allege mere continuation where it could not "establish that only one corporation existed after the sale" of assets); *In re Asbestos Litigation (Bell)*, 517 A.2d 697, 699-700 (Del. Super. Ct. 1986) ("The primary elements of continuation include…the existence of only one corporation at the completion of the transfer."). In fact, this District has held the "continued existence" of the purported predecessor company "precludes [p]laintiff's assertion that [d]efendants are a mere continuation." *Edwards,* 2015 WL 9484458, at *9.

In this case, Plaintiff has not plead, and cannot demonstrate, that only one corporation existed after any purported sale or transfer of assets to DHC or Hotelco Curacao. Accordingly, Plaintiff is precluded from asserting that DHC and/or Hotelco Curacao are mere continuations of Desarrollos Aerohotelco (and/or Desarrollos Hotelco) and subject to successor-in-interest liability.

---

[11] Other cases have described the elements of "mere continuation" as requiring the Court the court to consider "whether the two have common officers and stockholders; whether the two are in the same line of business; and whether sufficient consideration was paid for the predecessor's assets." *See Beach TV Properties, Inc. v. Solomon*, 15-1823, 2016 WL 6068866, at *11 (D.D.C. October 14, 2016).

Finally, "the gravamen of the traditional 'mere continuation' exception is the continuation of the *corporate entity* rather than continuation of the business operation." *LeSane v. Hillenbrand Industries, Inc.*, 791 F. Supp. 871, 875 (D.D.C. 1992) (emphasis in original); *Beach TV Properties, Inc. v. Solomon*, 2016 WL 6068806, 15-1823, 2016 WL 6068866, at *11 (D.D.C. October 14, 2016) ("Importantly, the District of Columbia does *not* recognize the continuity of enterprise exception to the general rule of nonliability.") (emphasis in original). In this case, Plaintiff has not alleged in the First Amended Complaint, nor argued in its Trial Brief, that DHC and/or Hotelco Curacao embody a continuation of Aerohotelco or Hotelco, C.A.'s corporate entity. Instead, Plaintiff has proposed to show that DHC and Hotelco Curacao were "transferr[ed] a valuable asset" and continued "the business…under the Agreement" to invest in, and develop, the Ritz Carlton, Aruba. *See* Trial Brief at p. 5; *see also* Plaintiff's Proposed Jury Instruction on Alter Ego Liability (Doc. 71-13; 88). Plaintiff's argument, even if true, is insufficient to establish that all, or a meaningful part, of the assets were transferred by Aerohotelco and/or Hotelco, C.A. to DHC or Hotelco Curacao as a means to accomplish a "mere continuation" of the predecessor entity, as opposed to the continuation of a single business operation.[12] *See e.g. Direct Supply, Inc. v. Specialty Hospitals of America, LLC*, 878 F. Supp. 2d 13 (D.D.C. 2012) (finding no "mere continuation" where there was merely a change in the ownership and operation of the hospital and the two entities continued to exist)[13]; *see also Beach TV Properties, Inc. v. Solomon*, 2016 WL

---

[12] Most opinions refer to a transfer of all assets and even compare the "mere continuation" analysis to that of the "merger" analysis. However, there are opinions that, without analysis, begin by referring to companies that acquire "all or part of the assets." There is at least one opinion (applying Utah law) that speaks directly to this issue and finds the standard in Utah is "all or substantially all" of the assets. This was a District of Utah opinion.

[13] In *Direct Supply*, the transfer of the asset (the ownership of a hospital) was done by mayoral order and was not sold or transferred by the alleged predecessor entity. The Court did not consider this a sale or transfer of assets between entities for successor liability purposes.

10

6068806 at *11 (failing to demonstrate a "continuation" where "[t]here was no meaningful transfer of assets between two entities"); *Bingham*, 637 A.2d at 92 ("[T]he fact that both were involved in some phase of the development of the weekly newspaper is not the key factor. Rather it is whether entities involved remained separate.").

The cases cited by Plaintiff in its Trial Brief are inapposite or easily distinguished. Plaintiff relies on *Sodexo* for the proposition that there can be successor liability without a sale or transfer. 264 F. Supp. 3d at 370-71. In *Sodexo*, however, the Court did not dispense with the sale requirement, but, rather found "inconclusive" that the sale requirement had not been met where assets were acquired in a foreclosure sale, and "case law from other jurisdictions indicat[e] that a foreclosure sale may be construed as a sale." *Id*. at 271. Similarly, in *Jackson v. George,* the Court did not decide that you could have successor liability without a sale. 146 A.2d 405, 414 (D.C. 2016). Instead, the *Jackson* court held that you could use the doctrine of successor liability (and its exceptions) "as an analogy to resolve the issue of whether the court had personal jurisdiction over" a defendant. *Id*. at 414. Moreover, notwithstanding the absence of a sale, the *Jackson* court found there had been a transfer of control over the predecessor entity's assets. *Id*.

Plaintiff's reliance on *Reese Bros. v. United States Postal Service* is similarly misguided. 477 F. Supp. 2d 31 (D.D.C. 2007). Contrary to the parenthetical in Plaintiff's Trial Brief, *Reese* did not hold that continuing the business operations of the predecessor, together with similar names and engaging in identical businesses was sufficient to find successor liability. Trial Brief at p. 5. The *Reese* opinion concerned a motion to dismiss and the *Reese* court merely found that the movant

---

Moreover, the case can stand for the proposition that owning a particular asset is not, alone, sufficient to establish a continuation of the predecessor's "corporate *entity*." *Direct Supply* is discussed in *Sodexo,* wherein the Court noted that the alleged predecessor entity did not sell the asset, but also that there was no "corporate continuation" "in light of their differing corporate forms." 930 F. Supp. 2d at 239.

11

had failed to demonstrate "beyond doubt" that plaintiff could not prove its claims. In fact, at least one subsequent opinion by the District Court for the District of Columbia has held that the *Reese* case "predates the Supreme Court's *Twombly* and *Iqbal* decisions, which increased the factual hurdle that a complaint must overcome to survive dismissal." *Glenn*, 281 F. Supp. 3d at 143. Moreover, the *Glenn* court found *Reese* was a "case of weak facts that barely survived a lower pleading standard than exists today." *Id*.[14]

Accordingly, the cases cited by Plaintiff do not support its proposed jury instruction on successor-in-interest liability as it relates to Defendants DHC and Hotelco Curacao and, therefore, it should be rejected.

## II. Plaintiff's Alter Ego Instruction Is Improper and Inapplicable Under the Law and Should be Rejected.

Plaintiff contends this Court should give the jury an instruction on alter ego liability that would instruct the jury to find DHC and/or Hotelco Curacao liable as alter egos of Aerohotelco and/or Hotelco, C.A. for any alleged breach of the Agreement by Aerohotelco and/or Hotelco, C.A. Plaintiff's instruction, however, provides an incomplete, and incorrect, description of the law on alter ego liability.

The general rule is that the corporate entity will be respected. "The determination of whether a subsidiary is the alter ego of a parent corporation turns on whether the parent corporation so dominated the subsidiary corporation as to negate its separate personality." *AGS Intern. Services S.A. v. Newmont USA Ltd*, 346 F. Supp. 2d 64, 89 (D. D.C. 2004). "To pierce the corporate veil of two corporations and thereby for purposes of establishing that one is the alter ego

---

[14] The last case cited by Plaintiff does nothing to change the analysis and merely reaffirms that there is no "mere continuation" where the predecessor entity remains a viable business concern. *Material Supply Intern., Inc. v. Sunmatch Industrial Co., Ltd*., 62 F. Supp. 2d 13 (D.D.C. 1999).

of the other, Plaintiff must show 'by affirmative evidence' that there is not only unity of ownership and interest between the two corporations, but also **use of the corporate form to perpetrate fraud or wrong**." *Alkanani*, 976 F. Supp. 2d at 8 (emphasis added).  "In addition, the relevant time period for assessing whether two entities are alter egos is the time during which a business relationship existed between the plaintiff and defendant."  *Id*.

Piercing the corporate veil of a corporate parent and its subsidiary is a "rare exception grounded in equity considerations." *Id*. at 9; *Toumazou v. Turkish Republic of Northern Cyprus*, 71 F. Supp. 2d 7, 8 (D.D.C. 2014) ("Veil piercing is an extraordinary procedure that courts should not use lightly, and only extreme circumstances call for disregard of corporate form.").  "Therefore, the factor that predominates will vary in each case and the decision to pierce will be influenced by considerations of who should bear the risk of loss and what degree of legitimacy exists for those claiming the limited liability protection of a corporation.  *Alkanani*, 976 F. Supp. 2d at 9.

Finally, "a party seeking to pierce the corporate veil has the burden to make a showing that the corporation is really a dummy or sham for another dominating entity." *Flocco v. State Farm Mut. Auto. Ins. Co.*, 752 A.2d 147, 155 (D.C. 2000).  Courts in the District of Columbia have referred to its alter ego analysis as the "mere instrumentality test." *Bulletin Broadfaxing Network, Inc. v. The Times Mirror Co.*, Civ. A. No. 91-1614, 1992 WL 121477, at *5 (D.D.C. May 13, 1992).

### A.   Unity of Ownership and Interest

Courts typically look to four factors when considering unity of ownership and interest. First, courts look to whether the entities have maintained corporate formalities.  *Id*. at 9. Specifically, courts look to whether the entities share assets or funds, share offices or business locations, maintain separate payrolls and share directors or executives.  *Id*.  However, the Supreme

13

Court has held that "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary." *Alkanani*, 976 F. Supp. 2d at 9 (*quoting United States v. Bestfoods*, 524 U.S. 51, 69 (1998)).

Second, courts look to whether the parent company has control over the subsidiary. *Id*. "[D]ominant stock ownership alone," however, "does not create an identity of interest as an alter ego." *Alkanani*, 976 F. Supp. 2d at 9; *see also Flocco* 752 A.2d at 155 ("The fact that State Farm Fire is the wholly owned subsidiary of State Farm Mutual does not provide a sufficient basis for such a finding. Dominant stock ownership alone does not create an identity of interest as an alter ego.") (internal quotation marks omitted); *AGS Intern. Services S.A.*, 346 F. Supp. 2d at 90 ("even a wholly owned subsidiary is presumed to be a separate entity in the absence of clear evidence that it is controlled by the parent").

In *AGS Inter. Services S.A.*, the District Court for the District of Columbia discussed a 1925 United State Supreme Court opinion and stated:

> Despite evidence that the defendant dominated the subsidiary, immediately and completely, and exerted its control both commercially and financially in substantially the same way, the [Supreme Court] decided that the two companies were wholly independent corporations because they maintained separate financial and transactional records.

346 F. Supp. 2d at 90 (discussing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925) (internal quotation marks omitted)). Moreover, "courts have uniformly held that stock ownership and shared corporate officers and directors is insufficient as a matter of law to meet the mere instrumentality test." *Bulletin Broadfaxing Network, Inc.*, 1992 WL 121477, at *7 (*citing U.S. v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691 (5th Cir. 1985) ("Our cases are clear that one-hundred percent ownership and identity of directors and officers are, even together, an insufficient basis for applying the alter ego theory to pierce the corporate veil.")). This is true "even when [a

14

corporation] is wholly owned by a single individual." *Motir Services, Inc. v. Ekwuno*, 191 F. Supp. 3d 98, 110 (D. D.C. 2016). In fact, the District Court for the District of Columbia has stated,

> One-person corporations are authorized by law and individuals who expend time and resources to create and incorporate a corporation experience burdens as well as benefits associated with the separation between a company's rights and their own. As a result, one-person corporations…should not lightly be labeled a sham, and a plaintiff must allege some injustice or inequity warranting intrusion into the legally distinct identities of a corporation and its sole owner— beyond unity of ownership and interest—to allege sufficiently an alter ego theory of liability. While the court may ignore the existence of the corporate form whenever an individual so dominates an organization as in reality to negate its separate personality, such a situation must be distinguished from that merely of single ownership, or of deliberate adoption and use of a corporate form in order to secure its legitimate advantages.

*Id*.

Courts have, however, looked at a host of other factors when considering the parent's control of the subsidiary. For example, courts have looked to whether the companies had common business departments; whether the parent financed the subsidiary; whether the subsidiary was inadequately capitalized; whether the parent corporation was inadequately capitalized[15]; whether the entities filed joint tax returns; whether the entities had joint accounting; whether the entities had joint payroll; whether the subsidiary was operated as a mere division of the parent; whether the subsidiary depended on the parent for substantially all of its business; whether the subsidiary's property was used by the parent as its own; and whether the subsidiary was operated exclusively in the parent's interest. *See e.g. Material Supply Int'l, Inc. v. Sunmatch Industrial Co.*, 62 F. Supp.

---

[15] *See Motir Services, Inc. v. Ekwuno*, 191 F. Supp. 3d 98, 109 (D. D.C. 2016) (finding plaintiff failed to allege defendant was "purposely undercapitalized"); *United States ex. Rel. Scollick v. Narula*, 215 F. Supp. 3d 26 (denying argument of alter-ego and finding plaintiff failed to allege corporations were "undercapitalized or that he would be unable to recover from them if successful" in its action).

2d 13, 22 (D. D.C. 1999); *Bulletin Broadfaxing Network, Inc.*, 1992 WL 121477, at *5; *Toumazou*, 71 F. Supp. 3d at 20; *Ivanov v. Sunset Pools Mgmt., Inc.*, 524 F. Supp. 2d 13, 15 (D. D.C. 2007). It is, however, irrelevant that "the parent ultimately benefitted from the activities of the subsidiary or that the subsidiary's supervisors reported to the parent's officers." *Id*. at 20-21.

Finally, the courts will look to whether there has been some "fraudulent use of the corporation to protect [the] business from the claims of credits." *Bingham*, 637 A.2d at 93. This factor appears to be different from the second prong of the alter ego analysis. As discussed more fully below, the second prong of the analysis used to require fraud, but has now been modified to reject the requirement that fraud be shown, and allows, in some circumstances, for "considerations of justice and equity" to justify piercing the corporate veil. *Id*. Still, courts continue to look "especially [to] whether the corporate form has been used to effectuate a fraud." *Toumazou*, 71 F. Supp. 3d at 20.

### B. Fraud

Perhaps the most deficient portion of Plaintiff's analysis is the second element of alter ego. The second element of the alter ego analysis requires use of the corporate form to perpetrate fraud or a wrong. While this element has been somewhat modified over the years, the case law appears to continue to require, however, some injustice, or wrong actually be committed. *See e.g. Alkanani*, 976 F. Supp. 2d at 10 (finding plaintiff failed to allege any facts or show any evidence that the "corporate form was used to perpetrate fraud); *see also Vuitch v. Furr*, 482 A.2d 811, 815-819 (D.C. 1984) (rejecting the contention that there must be a showing of fraud "directly tainting the obligation on which the plaintiff is suing," but allowing the corporate veil to be pierced only

after finding "a knowing and intentional violation of District of Columbia law.");[16] *Kelleher v. Dream Catcher, LLC*, 221 F. Supp. 2d 157, 160 (D. D.C. 2016) (finding plaintiff failed to allege alter ego entity was used to commit a fraud or wrong where statute cited by plaintiff did not require defendant to obtain a particular license); *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 40 (D. D.C. 2015) (finding plaintiff's alter ego theory could survive a motion to dismiss *because* plaintiff had alleged several tort causes of action, which survived the motion to dismiss); *Oehme, van Sweden & Associates, Inc. v. Maypaul Trading & Services Ltd.*, 902 F. Supp. 2d 87 (D. D.C. 2012) (refusing to pierce corporate veil despite unity of ownership or interest because there was no "affirmative evidence of fraud").

Accordingly, Plaintiff's proposed jury instruction on alter ego liability as it relates to Defendants DHC and Hotelco Curacao should be rejected.[17]

## **CONCLUSION**

In conclusion, Plaintiff's proposed instructions are improper and gloss over the important law of the case and many of the elements or factors that need to be found and/or considered, and should not be submitted to the jury as proposed by Plaintiff.

---

[16] Even the standard jury instruction for alter-ego states, in part, "[i]f, however, the plaintiff can show that…[defendant] used the corporation to perpetrate a fraud, wrong or an injustice…." *See* 1-4 Civil Jury Instructions for DC §4.06.

[17] If the Court is inclined to grant an alter ego instruction as to potential liability of DHC and/or Hotelco Curacao, Defendants request the opportunity to submit a competing instruction.

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | AVILA RODRIGUEZ HERNANDEZ<br>   MENA & FERRI LLP |
| Dated: April 30, 2018 | By:     s/Jennifer N. Hernandez<br>Wilfredo A. Rodriguez (admitted *pro hac vice*)<br>Florida Bar No.: 334936<br>Jennifer N. Hernandez (admitted *pro hac vice*)<br>Florida Bar No.: 085961<br>2525 Ponce de Leon Boulevard, Suite 1225<br>Coral Gables, Florida 33134-6049<br>Telephone: (305) 779-3567<br>Fax: (305) 779-3561<br>Email: frodriguez@arhmf.com<br>       jhernandez@arhmf.com |
|  | and |
|  | LOSS, JUDGE & WARD, LLP |
|  | By: _____<br>Charles W. Chotvacs<br>D.C. Bar No. 484155<br>Hamilton Square<br>600 14th Street, N.W., Suite 450<br>Washington, D.C. 20005<br>Telephone: 202-778-4078<br>Fax: 202-778-4099<br>Email: cchotvacs@ljwllp.com |
|  | *Counsel for Defendants Desarrollos Hotelco, C.A., Desarrollos Hotelco Corporation Curacao Holding, N.V., and Desarrollos Hotelco Corporation DHC Aruba, N.V.* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of April, 2018, I will cause the foregoing Response to Plaintiff's Trial Brief on Successor/Related Entity Liability and Alter Ego Liability to be electronically filed with the Clerk via the Court's ECF/ECM system and electronically served on the following:

Eric N. Heyer
Karyna Valdes
Jesse Jenike-Godshalk
THOMPSON HINE LLP
1919 M Street, N.W., Suite 700
Washington, D.C.  20036
Telephone - (202) 331-8800
Facsimile – (202) 331-8330
eric.heyer@thompsonhine.com
Karyna.valdes@thompsonhine.com
Jesse.Jenike-Godshalk@thompsonhine.com

*Counsel for Plaintiff Bazarian*
*International Financial Associates, LLC*

    /s/ Jennifer N. Hernandez
    Jennifer N. Hernandez